Richard M. Pachulski (admitted *pro hac vice*)
Alan J. Kornfeld
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email:   rpachulski@pszjlaw.com
          akornfeld@pszjlaw.com
          dgrassgreen@pszjlaw.com
          jrosell@pszjlaw.com

*Counsel to Defendant Pierce Robertson*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | : | Case No. 22-10943 (MEW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------------x

| | | |
|---|---|---|
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Adv. Proc. No. 22-01138 (MEW) |
| | : | |
| PIERCE ROBERTSON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------x

**OBJECTION OF DEFENDANTS TO DEBTORS'**
**MOTION TO EXTEND THE AUTOMATIC STAY**
**OR, IN THE ALTERNATIVE, FOR INJUNCTIVE RELIEF**
**ENJOINING PROSECUTION OF CERTAIN PENDING LITIGATION**

# TABLE OF CONTENTS

Page(s)

I.  PRELIMINARY STATEMENT ........................................................................ 1

II. BACKGROUND ........................................................................................... 3

III. THE MOTION MUST BE DENIED UNDER
APPLICABLE SECOND CIRCUIT LAW ..................................................... 6

    A.  The Action Against Non-Debtors Is Not Stayed by Section 362(a)(1). ................ 7

    B.  The Action Against Non-Debtors Is Not Stayed by Section 362(a)(3). ................ 9

    C.  The Debtors Have Not Met Their High Burden of Proof on
Any of the Traditional Factors the Court Must Consider to
Enjoin the Action  Under Section 105(a) and Bankruptcy Rule 7065 ................. 10

        1.  The Debtors Have Failed to Prove the Likelihood of a
Successful Reorganization. .................................................................... 11

        2.  There is No Risk of Imminent, Irreparable Harm to the
Estates if the Action Were to Proceed Against Cuban. ........................... 13

        3.  The Balance of Harms and Public Interest Weigh
Against Enjoining the Action ................................................................. 18

IV. CONCLUSION ........................................................................................... 19

Defendant Pierce Robertson and the other defendants in the above-captioned adversary proceeding (collectively, the "Robertson Defendants") object (the "Objection") to (a) *The Debtors' Motion to Extend the Automatic Stay or, in the Alternative, for Injunctive Relief Enjoining Prosecution of Certain Pending Litigation* [Adv. Dkt. No. 2] (the "Motion") and (b) the joinder to the Motion filed by the Cuban Parties (as defined below) [Adv. Dkt. No. 8].[1]  In support of this Objection, the Robertson Defendants respectfully state as follows:

## I.   PRELIMINARY STATEMENT

By the Motion, the Debtors seek to halt the pursuit of the Robertson Defendants' direct claims against non-debtor third parties for their respective independent wrongdoing that caused substantial harm to the Robertson Defendants.

The Robertson Defendants commenced their putative class action lawsuit (the "Action") in the United States District Court for the Southern District of Florida (the "S.D. Fla. Court") against Stephen Ehrlich, the Debtors' Chief Executive Officer and co-founder ("Ehrlich"), Mark Cuban, a promoter of the Debtors and their cryptocurrency business, and Dallas Basketball Limited d/b/a Dallas Mavericks (collectively, "Cuban" or the "Cuban Parties"), captioned *Robertson et al. v. Cuban et al.*, No. 1:22-cv-22538-RKA (S.D. Fla. Aug. 10, 2022), asserting, *inter alia*, claims for violations of applicable securities laws and consumer protection laws, aiding and abetting fraud and breach of fiduciary duties, and civil conspiracy.  To the extent the Motion is denied (which it should be), the Robertson Defendants will file an amended *Complaint* in the Action, substantially

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.  All citations herein to "Adv. Dkt. No. __" refer to the adversary proceeding docket in Adv. Proc. No. 22-01138 (MEW).  All citations to "Bankr. Dkt. No. __" refer to the docket in the Debtors' lead chapter 11 case, Case No. 22-10943 (MEW).

in the form attached hereto as **<u>Exhibit A</u>** (as amended, the "<u>Complaint</u>"), which removes various causes of action that the Committee asserts belong to the Debtors' estates, such as claims for breach of fiduciary duty.[2] The only remaining claims in the Complaint are direct third party claims against non-debtors.[3]

Specifically, the Complaint seeks to hold Ehrlich and Cuban accountable for their own malfeasance (not the Debtors' malfeasance) and seeks redress from Ehrlich and Cuban on account of the Robertson Defendants' own direct claims against Ehrlich and Cuban (not derivative or other claims belonging to the estates). Although the Robertson Defendants believe that this Action against non-debtor parties should be allowed to proceed unfettered, the Robertson Defendants consent to having the Action enjoined solely as against Ehrlich until the earlier of (a) the effective date of a confirmed chapter 11 plan in the Debtors' chapter 11 cases (the "<u>Chapter 11 Cases</u>"), (b) conversion of the Chapter 11 Cases to chapter 7, and (c) December 31, 2022 ("<u>Stay Termination Date</u>").[4]

However, the Action should be allowed to proceed as to the Cuban Parties. Tellingly, the Motion makes very few specific references to the Cuban Parties, and instead substantively focuses on Ehrlich, the Debtors' Chief Executive Officer and co-founder, and how the Action vis-à-vis

---

[2] The form of amended Complaint will be filed on or before seven (7) calendar days prior to the hearing on the Motion.

[3] The Robertson Defendants reserve all of their rights with respect to the Complaint and the Action, including, without limitation, further amending the Complaint.

[4] As discussed further herein, the Debtors have filed a motion for approval of an asset purchase agreement with a third party [Bankr. Dkt. No. 472], and under the proposed asset purchase agreement (Sec. 8.1(i)(iv)), a confirmation order must be entered in the Chapter 11 Cases by December 15, 2022 and said order must be a final order by December 31, 2022. The foregoing supports and is in line with the Robertson Defendants' position that the Action in relation to Ehrlich should not be stayed beyond December 31, 2022.

Ehrlich allegedly impacts the Debtors and their estates.

There is no basis in fact or law for staying the Action against the Cuban Parties. Cuban is not a director, officer, or other insider of the Debtors, and the Debtors' arguments in the Motion made in relation to Ehrlich are generally inapplicable to Cuban. Further, the Debtors have failed to articulate any extraordinary circumstances justifying an extension of the automatic stay to, or the imposition of an injunction against, the Action under Second Circuit law. Accordingly, the Motion should be denied.

## II.  BACKGROUND

1.      On July 5, 2022, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York, thereby commencing the Chapter 11 Cases.

2.      On July 19, 2022, the U.S. Trustee appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Committee").

3.      On August 10, 2022, the Debtors initiated the above-captioned adversary proceeding against the Robertson Defendants and filed the Motion to extend the automatic stay under section 362 to, or in the alternative, to enjoin the prosecution under section 105(a) of, the Action.

4.      On August 12, 2022, the Debtors filed their *First Amended Joint Plan of Reorganization* [Bankr. Dkt. No. 287] (the "Proposed Plan"). It is plainly evident that the

Proposed Plan is a placeholder plan missing key detail and information.[5]  For example, the Proposed Plan provides for general unsecured creditors to receive their *pro rata* share of the "Claims Allocation Pool," but that capitalized term is not defined.  *See* Proposed Plan, pp. 4 and 20.  Moreover, as discussed further below, the Proposed Plan is subject to significant risks and uncertainties relating to federal and state securities law matters, as acknowledged by the Debtors themselves, which could outright thwart confirmation of the Proposed Plan or other reorganization plan (as well as thwart, notably, a sale of the Debtors' digital and related assets) and/or delay the effectiveness of any confirmed plan for many months if not longer.  As noted below, the Debtors recently filed a motion to sell substantially all of their assets to a third party pursuant to an asset purchase agreement, one implication of which is that the Proposed Plan will be amended to be a liquidating plan.

5.      On August 31, 2022, the S.D. Fla. Court entered an order, among other things, staying the Action and administratively closing the Action without prejudice to the parties.

6.      On September 9, 2022, the S.D. Fla. Court entered a subsequent order (the "September 9 Order") maintaining that the Action shall remain administratively closed, subject to the Bankruptcy Court's ruling on the Motion.  Pursuant to the September 9 Order, if the Bankruptcy Court permits the Action to proceed, any party in the Action may move to reopen the

---

[5]    The Robertson Defendants have filed an objection to the Debtors' proposed disclosure statement [Bankr. Dkt. No. 443], which includes certain objections to the Proposed Plan.

Action – and the Robertson Defendants plan to move to reopen the Action upon denial of the Motion.

7.     On August 26, 2022, the Committee filed a motion to intervene in the Action [Adv. Dkt. No. 9] ("Motion to Intervene"), asserting, among other things, that any estate assets that are the subject of the Action "must be preserved while the Committee conducts its investigation into various potential estate causes of action, including potential actions against certain of the Class Action Defendants."  Motion to Intervene at ¶ 22.  The Robertson Defendants believe that the Complaint in the Action, as modified in the form attached hereto as **Exhibit A**, addresses the Committee's concerns relating to estate causes of action.  As discussed herein, by the Action, as amended, the Robertson Defendants are asserting their own direct claims against Ehrlich and the Cuban Parties, not derivative or otherwise estate claims.  If and to the extent the Committee is in fact seeking to stay third parties' direct claims against Ehrlich and the Cuban Parties, such request is unjustified and should be denied by the Court for the reasons set forth in this Objection. Moreover, such a position by the Committee would be inconsistent with creditors' best interests since the Committee's constituents (*i.e.*, the general unsecured creditors of the Debtors), to whom the Committee owes a fiduciary duty, stand to benefit from recoveries from the Cuban Parties in the Action.

8.     On September 28, 2022, the Debtors filed a motion for authority to enter into an asset purchase agreement with West Real Shires Inc. ("FTX") [Bankr. Dkt. No. 472] (the "Sale Motion") to sell substantially all of Voyager Digital, LLC's assets -- one implication of which is

that the Proposed Plan will be amended to be a liquidating plan that effectuates the proposed sale.[6] Based on the information provided so far by the Debtors, the proposed asset sale has nothing to do with Cuban, and thus it presents no reason to stay the Action against Cuban. Indeed, the apparent potential shortfall in recovery for the Debtors' customers, taking into account the proposed sale and estimated proceeds thereof, is in the billions of dollars.[7] That is, under the Debtors' proposed sale / liquidating plan scenario, the Debtors' customers will receive only a relatively small recovery. Thus, customers pursuing and monetizing other sources of recovery, including the customers' direct, not estate, claims against the Cuban Parties through the Action, will be an important and necessary process that should not be frustrated by the Court.

### III. THE MOTION MUST BE DENIED UNDER APPLICABLE SECOND CIRCUIT LAW

9.       The Motion requests the Bankruptcy Court to enjoin the prosecution of the Action under section 362 or, in the alternative, section 105(a). These provisions are distinct, and the Debtors are not entitled to a stay of the Action against Cuban (or Ehrlich) under either statutory predicate.

10.       The Debtors bear the burden of proof in seeking the "extraordinary and drastic remedy" of enjoining litigation against a non-debtor. *See, e.g., Chase Manhattan Bank v. Third*

---

[6]  The Robertson Defendants reserve all of their rights with respect to the Sale Motion, any modified plan, and/or any related filings.

[7]  The Debtors have represented in their consolidated unaudited financial statements (the most recent for the quarter ended March 31, 2022) that they hold more than $5.4 billion in crypto assets and fiat payable to customers. *See also Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Bankr. Dkt. No. 15] ("Ehrlich Declaration"), ¶ 19, p. 9. Under the proposed sale, customers would receive only about 25% of such amounts back. *See* Sale Motion, pp. 1-2 (FTX's bid is comprised of "(i) the value of cryptocurrency on the Voyager platform as of a date to be determined, which, as of September 26, 2022, is estimated to be $1.311 billion, plus (ii) additional consideration which is estimated to provide at least approximately $111 million of incremental value to the Debtors' estates").

*Eighty-Ninth Assoc. (In re Third Eighty-Ninth Assoc.)*, 138 B.R. 144, 146 (S.D.N.Y. 1992); *In re Anje Jewelry Co., Inc.,* 47 B.R. 485, 487 (Bankr. E.D.N.Y. 1983) ("[A] preliminary injunction is an extraordinary and drastic remedy which should not be routinely granted except upon a clear showing that the movant has carried its heavy burden;" citation omitted). Further, an injunction is an equitable remedy issued at the Court's discretion. *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006).

A.    <u>The Action Against Non-Debtors Is Not Stayed by Section 362(a)(1).</u>

11.    By its terms, section 362(a)(1) of the Bankruptcy Code automatically stays the commencement or continuation only of a proceeding "***against the debtor***" that arose before the commencement of the case. Nothing in section 362(a)(1) extends the stay to non-debtor defendants merely because they have some affiliation with the debtor. *Teachers Ins. & Annuity Assn v. Butler,* 803 F. 2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to 362(a) are limited to debtors and do not encompass non-bankruptcy co-defendants").

12.    Because the Action seeks redress in relation to non-debtor defendants and ***their own respective malfeasance and independent liability to the Robertson Defendants***, there is no basis for any court to determine that the Debtors are a necessary party to the Action.[8] *See, e.g., In re Metal Center, Inc.,* 31 B.R. 458, 462 (Bankr. D. Conn. 1983) (extension of stay inappropriate where non-debtor defendant is independently liable as, for example, where the debtor and another

---

[8]    In specific regard to the Robertson Defendants' direct claims against the Cuban Parties, *see, e.g., Wildes v. Bitconnect Int'l PLC,* 25 F.4th 1341, 1346-47 (11th Cir. 2022) ("We decline to adopt an interpretation that both contradicts the text and allows easy end-runs around the [Securities] Act…. When a person solicits the purchase of securities to serve his (or the security owner's) financial interests, he is liable to a buyer who purchases those securities-whether that solicitation was made to one known person or to a million unknown ones.").

are joint tortfeasors or where the non-debtor's liability rests upon his own breach of a duty); *Stanford v. Foamex L.P.,* 2009 U.S. Dist. LEXIS 32405 at *10-17 (E.D. Pa. April 15, 2009) (District Court handling ERISA civil enforcement action refused to extend stay to non-debtor defendants because the debtor (against whom the action was stayed) was not necessary to the adjudication of ERISA action and the claims against non-debtor defendants were premised on their own conduct).

13.    The District Court for the Southern District of New York in *Mardice v. Ebony Media Operations*, 2021 U.S. Dist. LEXIS 8520 (S.D.N.Y. Jan. 15, 2021), properly explained the law in the Second Circuit:

> "[I]n situations where a codefendant is independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of a duty, then the protection afforded a debtor under the automatic stay would clearly not extend to such nondebtor." *Thomson Kernaghan & Co. v. Glob. Intellicom, Inc*., No. 99 CIV. 3005 (DLC), 2000 U.S. Dist. LEXIS 6650, 2000 WL 640653, at *15 (S.D.N.Y. May 17, 2000) (quoting *In re Metal Center, Inc*., 31 B.R. 458, 462 (Bankr. D. Conn. 1983)) (declining to stay claims against nondebtor defendant where such claims were not "derivative of his status as Chairman and Chief Executive Officer of [debtor]," but rather are premised upon his "own conduct, including an alleged breach of his fiduciary duty"); *see also, e.g., Cano v. DPNY, Inc*., 287 F.R.D. 251, 262 (S.D.N.Y. 2012) (holding that the automatic stay did not apply to the proposed defendants where the plaintiffs alleged that the proposed defendants "are joint employers and, therefore, are jointly and severally liable to the plaintiffs for violations of the FLSA [Fair Labor Standards Act] and NYLL"). "This limitation on the unusual situation exception has been adopted in this district and by numerous other courts." *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc*., 945 F. Supp. 603, 608 (S.D.N.Y. 1996) (citations omitted).

*Id*. at *8-*9. Thus, the law is clear in this Circuit that the requested stay will be denied where, as in the instant matter, the action against the non-debtor party relates to the party's own separate wrongdoing harming the non-debtor plaintiff. *See also*, *e.g.*, *Hernandez v. Immortal Rise, Inc*., 2014 U.S. Dist. LEXIS 33823, at *12 (E.D.N.Y. March 13 2014) (a stay "should not be extended

where the non-debtor is independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty"); *Franco v. Ideal Mortg. Bankers, Ltd.*, 2017 U.S. Dist. LEXIS 186194, at *5 (E.D.N.Y. Nov. 9, 2017) (similar).

**B.      The Action Against Non-Debtors Is Not Stayed by Section 362(a)(3).**

14.      In the Motion, the Debtors allude to potential indemnity claims of Cuban against the estates, but have not asserted that Cuban is entitled to coverage under any of the Debtors' insurance policies. Thus, there has been no allegation by the Debtors that prosecution of the Action against Cuban will dissipate the proceeds of any estate insurance policies (as discussed above, the Robertson Defendants consent to the stay of the Action against Ehrlich until the Stay Termination Date).[9]

15.      Moreover, even if Cuban (who is not an officer or director of the Debtors) were covered under the Debtors' insurance policies, it is important to consider that Cuban (or any other covered person) may not be entitled to insurance coverage and/or may have to disgorge any insurance proceeds (including for defense costs) if it is determined that he had committed fraud or other exempted actions or acted in bad faith.

16.      Additionally, the Debtors' assertion of prejudice from possible indemnity claims of Cuban should be viewed in the context of the entirety of the Chapter 11 Cases. Any unpaid indemnification claims of Cuban relating to the Action (if and to the extent valid and not offset

---

[9]      In relation to Cuban as well as Ehrlich, if applicable, the Debtors must identify the specific insurance policies that are allegedly at risk of immediate diminution and disclose the per claim and aggregate limits and any limits on defense costs.

against) would, at most, constitute general unsecured claims that would share a recovery *pro rata* with other general unsecured claims under a confirmed plan.[10]  On the other hand, recoveries to the Robertson Defendants and other class members resulting from the Action – *i.e.*, the general unsecured creditors of the Debtors other than Cuban – will be paid in 100 cent dollars by Cuban and/or other defendants.  In the foregoing case, the net effect for a particular unsecured creditor may be neutral, or tilted in favor of the Action against Cuban proceeding.

C.     **The Debtors Have Not Met Their High Burden of Proof on Any of the Traditional Factors the Court Must Consider to Enjoin the Action Under Section 105(a) and Bankruptcy Rule 7065.**

17.     Section 105(a) of the Bankruptcy Code is the source of the Court's power to enjoin litigation against non-debtors.   A stay of litigation against non-debtors, however, is only appropriate if the litigation threatens a debtor's reorganization.  *In re Granite Partners, L.P.,* 194 B.R. 318, 337-38 (Bankr. S.D.N.Y. 1996) (denying injunction of third party lawsuits for failure to show that lawsuits would frustrate reorganization efforts).  Further, a stay of litigation against non-debtors under section 105(a) must satisfy all the prerequisites for an injunction in the Second Circuit, with respect to which the movant (the Debtors here) bears the burden of proof.  2 COLLIER ON BANKRUPTCY ¶105.03 (16th ed. 2022) ("Unlike the automatic stay, a request for relief under section 105 must meet traditional requirements for an injunction, and must be presented and prosecuted in traditional formats."); *In re Anje Jewelry Co., Inc.,* 47 B.R. at 487 ("The court may issue a stay under section 105(a) only if the moving party satisfies the [] test established by the Second Circuit for the issuance of a preliminary injunction.").

---

10   The Robertson Defendants reserve all of their rights with respect to any indemnity or other claims that may be asserted by Cuban.

18.     Issuance of a preliminary injunction requires consideration of four factors: (1) the likelihood of success on the merits, (2) any imminent, irreparable harm to the estate in the absence of an injunction, (3) whether the balance of harms tips in favor of the moving party, and (4) whether the public interest weighs in favor of an injunction.  *Winter v. Natural Resources Defense Council, Inc.*, 55 U.S. 7, 20 (2008).  *See also In re Purdue Pharma L.P.*, 619 B.R. 38, 45-46 and 58-62 (S.D.N.Y. 2020) (applying traditional injunction criteria); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 409 (S.D.N.Y. 2007).

### 1.     The Debtors Have Failed to Prove the Likelihood of a Successful Reorganization.

19.     In the bankruptcy context, "likelihood of success" means the likelihood of a successful reorganization.  *In re Calpine Corp.,* 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006); *In re Lyondell Chemical Co.,* 402 B.R. 571, 590 (Bankr. S.D.N.Y. 2009) (successful reorganization is unknowable in the early days and may be a matter of whether the debtor is "on track," but any reasons to conclude that the debtor cannot reorganize weigh against this factor).

20.     As discussed above, the Debtors have filed a patently unconfirmable, placeholder plan – not supported by anyone other than the Debtors – that is missing key details including the treatment of general unsecured claims.  Such a deficient Proposed Plan cannot suffice in proving the likelihood of the Debtors' successful reorganization.

21.     Furthermore, it is indisputable that the Proposed Plan is subject to very substantial risks and uncertainties relating to federal and state securities law matters, including whether the

Debtors' digital and related assets are securities subject to federal and state regulation. The

Debtors at least acknowledge such risks.[11] These material risks and uncertainties cast a dark

shadow over the prospects of the Proposed Plan or other reorganization plan, and could derail the

Debtors' plan and/or sale process.[12] *See, e.g.*, Limited Objection of the Texas State Securities

Board [Bankr. Dkt. No. 186] at ¶ 25 ("Any bidder that ultimately becomes the final purchaser of

the Debtors' Assets will be obligated to comply with all applicable state laws and regulations, just

as if the property had been purchased outside of bankruptcy."); Supplemental Exhibit to the

---

[11] *See, e.g.*, Proposed Disclosure Statement [Bankr. Dkt. No. 288], p. 42 ("Consummation of the Restructuring Transactions may depend on obtaining approvals of certain Governmental Units that may be necessary or advisable. Failure by any Governmental Unit to grant an approval could prevent or impose limitations or restrictions on Consummation of the Restructuring Transactions and Confirmation of the Stand-Alone Plan."); p. 45 (listing certain risks/factors in Debtors' reorganization and business, including "recategorization of a particular cryptocurrency asset's or product offering's status as a 'security' or 'commodity' in any relevant jurisdiction, which may result in greater regulatory scrutiny, investigations, fines, and other penalties"); p. 48 ("The Debtors' business is subject to extensive laws, rules, regulations, policies, orders, determinations, directives, treaties, and legal and regulatory interpretations and guidance in the markets in which the Debtors operate, including those governing money transmission, financial services, banks and trust companies, securities, broker dealers and alternative trading systems, or ATS, commodities and commodities interests such as derivatives, credit, cryptocurrency asset custody, exchange, and transfer, cross-border and domestic money and cryptocurrency asset transmission, retail and commercial lending, usury, foreign currency exchange, privacy, data governance, data protection, cybersecurity, fraud detection, retail protection, escheatment, antitrust and competition, bankruptcy, tax, anti-bribery, economic and trade sanctions, anti-money laundering, and counter-terrorist financing, among others… [S]ome applicable laws and regulations do not contemplate or address unique issues associated with the cryptocurrency economy, are subject to significant uncertainty, and vary widely across U.S. federal, state, and local and international jurisdictions…. To the extent the Debtors have not complied with such laws, rules, and regulations, the Debtors could be subject to significant fines, revocation of licenses …, limitations on their products and services, cease and desist orders in one or more states, reputational harm, and other regulatory consequences, each of which may be significant and could adversely affect their business, operating results, and financial condition." The proposed Disclosure Statement has not been approved by the Court, and the Robertson Defendants have filed an objection thereto [Bankr. Dkt. No. 443]. The Robertson Defendants reserve all of their rights with respect to the proposed Disclosure Statement, and the references thereto herein are not indicative of any support of or consent by the Robertson Defendants to any portion of the proposed Disclosure Statement.

[12] The Debtors are currently involved in numerous securities related matters and proceedings, alleging, *inter alia*, some or all of the Debtors' digital assets/transactions constitute securities subject to extensive federal and state securities laws. *See, e.g.*, Proposed Disclosure Statement, pp. 49-51 (since early 2022, Debtors have been the subject of many investigations, cease and desist orders, and other proceedings involving the SEC, the FDIC, the CFTC, Alabama, California, Georgia, Indiana, Kentucky, New Jersey, Oklahoma, South Carolina, Texas, Vermont, Washington, and Washington, D.C.). Such securities and other non-bankruptcy law matters indicate the extensive, complex, lengthy and costly hurdles in front of the Debtors' reorganization and plan efforts.

Limited Objection of the Texas State Securities Board [Bankr. Dkt. No. 221] (attaching letters from 17 State Agencies and Attorney Generals' Offices supporting the Texas State Securities Board). The Debtors have failed to provide evidence and other support necessary to prove the likelihood of the Debtors' success under such circumstances.

>    **2.      There is No Risk of Imminent, Irreparable Harm to the Estates if the Action Were to Proceed Against Cuban.**

22.      In the bankruptcy context, courts construe the risk of "imminent, irreparable harm" to mean there must be an imminent and substantial threat to the reorganization process posed by the action sought to be enjoined. *Shapiro v. Cadman Towers, Inc.,* 51 F. 3d 328, 332 (2d Cir. 1995) (injury must be neither remote nor speculative, and actual and imminent). *See also In re Calpine Corp.,* 365 B.R. at 410 ("[T]he threat to the reorganization process must be imminent, substantial and irreparable."); *FPSDA II, LLC v. Larin (In re FPSDA I, LLC)*, 2012 Bankr. LEXIS 5928, at *27 (Bankr. E.D.N.Y. Decl. 26, 2012) ("in keeping with the principle that extending the stay to non-debtors is *extraordinary* relief, the party seeking extension of the stay must put forth real evidence demonstrating an actual impact upon, or threat to, the reorganization efforts if the stay is not extended" (emphasis in original)).

23.      The Debtors have provided no evidence of any actual imminent and irreparable harm that will stem from the Action proceeding against Cuban, and instead rely on general and conclusory allegations.

      **a.**      **The Possibility of Indemnity Claims Being Asserted Against Debtors By Non-Debtor Litigants Is Not a Dispositive Factor, and the Court Should Give Little, If Any, Weight to This Factor in the Instant Matter.**

24.      In the Motion, the Debtors assert that they "also face indemnity claims" from Cuban relating to the Action (p. 3 n.3 and p. 16), and "[t]hese indemnification obligations warrant an extension of the stay in this case" (p. 16). The Debtors have not explained to the Court and parties in interest the nature and extent of Cuban's alleged indemnity claims against the estate, and any potential defenses, objections or offsets thereto (including, for example, any potential indemnity or other claims of the estates against Cuban). Baseless, ambiguous assertions of potential indemnification claims against the estate are clearly insufficient for extension or imposition of any stay against the Action. *See, e.g., N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 564 B.R. 192, 195 (S.D.N.Y. 2016) ("The mere possibility of a future indemnification claim will not support application of the automatic stay"); *Mardice v. Ebony Media Operations*, 2021 U.S. Dist. LEXIS 8520, at *12-*13 (S.D.N.Y. Jan. 15, 2021) ("in any case, the possibility that the individual Defendants would be indemnified by Defendant Ebony alone is insufficient grounds for extension of the automatic stay"); *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2014 U.S. Dist. LEXIS 136152, at *10-*11 (S.D.N.Y. Sept. 25, 2014) ("Although a claim by Blanch for indemnification 'might lessen the overall percentage of a pro rata distribution to creditors, such distributive adjustment does not damage the [Debtor's] estate.' *In re First Cent. Fin. Corp.*, 238 B.R. 9, 20 (Bankr. E.D.N.Y. 1999) (declining to extend a stay where there was no threat of mass litigation and there was 'no discernable harm' if the non-debtor subsequently filed

a claim for indemnification); *see also Uto v. Job Site Servs., Inc.*, 444 B.R. 222, 224 (E.D.N.Y. 2011).").[13]

> **b.**   **The Debtors Cannot Show That Prosecution of the Action Will Expose the Estates to Risks of Collateral Estoppel, Evidentiary Taint, or Other Preclusion Doctrines.**

25.     The Debtors claim that if the Action proceeds, the Debtors will face substantial risks of collateral estoppel, record taint, evidentiary prejudice and the like.   These claims are baseless.  Importantly, the Action, as amended, seeks certain relief only against Ehrlich and Cuban, for each party's own independent acts and liabilities to the Robertson Defendants.

26.     Two requirements must be satisfied for the doctrine of collateral estoppel, also referred to as issue preclusion, to apply.  First, the identical issue must have been decided in a prior action and be decisive in the present action.  Second, the party to be precluded from re-litigating the issue must have had an opportunity to fully and fairly contest the prior determination. *Singleton Mgmt. v. Compere,* 673 N.Y.S. 2d 381, 383 (App. Div. 1st Dept. 1998) (citations omitted). Collateral estoppel can only apply to matters "actually litigated and determined" against the party to be precluded. *Id.*  Likewise, res judicata or claim preclusion requires an identity of claims between a prior and current action and privity of parties. *Id.; see also Gramatan Home Investors Corp. v. Lopez,* 414 N.Y.S. 2d 308, 311 (1979) ("[A] person may not be precluded from litigating

---

[13]   If a court were to unduly emphasize the prospect of indemnity claims against the estate as a factor, viable actions against directors, officers and other parties related to the debtor, who may have indemnification rights, will be discouraged and undermined  – a result which is neither justified by sound policy or equity.   This Court contemplated similar, analogous concerns in the plan context. *See In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717, 729 (Bankr. S.D.N.Y. 2019) (Judge Wiles) ("Some courts have justified [plan] releases of officers and directors on the ground that the releases are necessary to protect the debtors from indemnification claims that the directors and officers might make.   However, I fail to see how the possibility of an indemnification claim [against the estate] is a proper justification to take away the rights that claimants may have to pursue claims that they own directly against the officers and directors.").

issues resolved in an action in which that person was not a party." (citations omitted)).  The Debtors are not parties to the Action, and therefore cannot be at risk of collateral estoppel or res judicata.

27.     Indeed, if general concerns regarding the potential impact of pending litigation were sufficient for imposition of a stay, a litigant could never continue litigation against a non-debtor defendant that had some relationship to a debtor.  In *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282 (2d Cir. 2003)), the Second Circuit expressly rejected "apprehension" of collateral estoppel as a basis for enjoining litigation against non-debtors:

> We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision.  **If such apprehension could support application of the stay, there would be a vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants.**

*Id.* at 288 (emphasis added; stay of judgment appeal applied to debtor and his wholly owned corporation, but not to other co-defendant appellees).  *See also Franco v. Ideal Mortg. Bankers, Ltd.,* 2017 U.S. Dist. LEXIS 186194, at *5-*6 (E.D.N.Y. Nov. 9, 2017) ("Instead, he claims that a decision against him could have a 'Res Judicata effect on [Lend America's] bankruptcy trustee.' … However, the Court is not convinced that this argument requires a deviation from the general rule that automatic stays will not extend to non-debtors."; citing and relying upon *Queenie,* 321 F.3d at 288).[14]

---

[14]  It borders on the frivolous for the Debtors to argue that they will suffer cognizable prejudice if legal issues --such as whether the Debtors' customer transactions are securities subject to federal securities laws-- are adjudicated in the Action.  First, as discussed above, any such rulings in the Action would only be binding on Cuban or Ehrlich, as applicable; collateral estoppel is patently inapplicable because the Debtors are not parties in, nor necessary parties in, the Action.  Second, given the foregoing, the Debtors appear to want from the Court inoculation from any adverse precedent that may be set by rulings in the Action specifically and only against Cuban or Ehrlich.  However, of course, that is not an available remedy, just as the Debtors cannot prevent litigants in the Celsius Network bankruptcy case (Case No. 22-10964 (MG)) and other digital asset cases from adjudicating the crypto/securities issues in those cases, which may result in adverse precedent for the Debtors in whatever position they may ultimately pursue.

28.     Finally, any claim of possible evidentiary or record taint if the Action were to proceed makes no sense in the instant matter.  As discussed above, the focus of the Action is the separate malfeasance and direct liability of certain non-debtor parties to the Robertson Defendants, not to the estates.  If a separate action is commenced against the Debtors relating to matters raised in the Action against Cuban and Ehrlich, the Debtors will have an opportunity to build the evidentiary record in that separate action, which will be reviewed by the applicable neutral court. While the law on certain matters in the Action may be unsettled, the facts relevant to the Action are not subject to change.  The facts are what they are and will remain as such in any future litigation, and the Debtors cannot reasonably claim any prejudice in that regard.

**c.    The Debtors Do Not Stand to Suffer Any Other Unreasonable Financial/Personnel Burdens Related to the Action.**

29.     With respect to discovery matters in the Action, the estates are not subject to any undue and unfair burden in the event the Action were to proceed against Cuban in that the Debtors, through a special committee, has been in midst of investigating matters related to potential causes of action against insiders and other third parties (such as Cuban given his prominent public promotional role[15]) and conducting discovery.[16]  In short, to the extent of any overlap in relevant

---

[15]  https://www.youtube.com/watch?v=aB9GpBOroIw (accessed September 30, 2022).

[16]  *See* Ehrlich Declaration [Bankr. Dkt. No. 15], ¶ 66, pp. 24-25 ("Voyager Digital LLC ('OpCo') formally formed a special committee (the 'Special Committee') on July 5, 2022, comprised of disinterested directors Timothy Pohl and Jill Frizzley. The Special Committee is vested with the authority to, among other things: … ● request documentation and information regarding OpCo's business, assets, properties, liabilities and business dealings with respect to any historical transactions undertaken by OpCo that the Special Committee deems necessary and appropriate to review; … ● conduct an independent investigation with respect to any potential estate claims and causes of action against insiders of OpCo, including any claims arising from the 3AC Loan").  *See also Debtor Voyager Digital, LLC's Application for Entry of Order Authorizing Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel* [Bankr. Dkt. No. 125], ¶ 14, p. 5 ("Quinn Emanuel expects to provide various legal services with respect to the Engagement, including, without limitation, interviewing and soliciting information from, and issuing document requests to, individuals and entities with knowledge, information, or documents relevant to the Special Committee's Mandate."), Exhibit 1 (Engagement Letter) (Quinn firm

17

discovery matters, the Debtors are not starting from scratch, thus offsetting any arguments of unfair, significant or unreasonable diversion of Debtors' personnel and estate resources from the chapter 11 cases.[17]

> ### 3. The Balance of Harms and Public Interest Weigh Against Enjoining the Action.

30. As detailed above, the Debtors have failed to prove any cognizable, material harms if the Action were to proceed against Cuban. In contrast, the Robertson Defendants continue to remain uncompensated for non-debtor parties' independent wrongdoing as set forth in the Complaint, notwithstanding the Action's stand-alone nature apart from the Debtors and their chapter 11 cases.

31. Further, the public interest is not advanced by staying the Action against Cuban. The Debtors' chapter 11 is a high-profile case affecting many thousands of customers, a number of which have filed letters and other pleadings expressing, *inter alia*, their fears and concerns over their prepetition deposited funds. *See*, *e.g.*, Docket Nos. 63, 69, 75, 76, 77, 90, 92, 93, 100, 101, 105, 108, 109, 111, 114, 122, 123, and 124 in Case No. 22-10943 (MEW). Enjoining a third party action against a non-debtor party, seeking to hold the non-debtor party responsible for his own acts, omissions and direct (and not estate) liabilities, serves no legitimate policy or purpose. Indeed, allowing the Action to proceed against Cuban sends a clear and important message to the

representing the "Special Committee" in connection with the "Special Committee Mandate," covering "Special Committee's (a) investigation of any historical transactions, public reporting, or regulatory issues undertaken by or relating to Voyager LLC, (b) investigation with respect to any potential estate claims and causes of action against insiders of Voyager LLC, and (c) any matters otherwise within the Special Committee's mandate").

---

17 Notably, the Debtors have not made any claim in the Motion, nor can they reasonably make a claim, that the estates will be prejudiced by Cuban having to devote his attention and time to the Action. There is no allegation of Cuban having a continuing role for the Debtors, which, as noted herein, proposes a sale / liquidating plan strategy.

Debtors' customers and other parties in interest that wrongdoers will be held accountable and cannot improperly escape liability because of the Debtors' chapter 11 case.

## IV.     <u>CONCLUSION</u>

For the reasons set forth above, the Robertson Defendants respectfully request that the Court enter an order denying the Motion and granting such further and other relief as may be just and appropriate.

*[Remainder of page intentionally left blank]*

DOCS_LA:345267.6

Dated: October 3, 2022          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Jason H. Rosell*

Richard M. Pachulski (admitted *pro hac vice*)
Alan J. Kornfeld
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (212) 561-7700
Email: rpachulski@pszjlaw.com
        akornfeld@pszjlaw.com
        dgrassgreen@pszjlaw.com
        jrosell@pszjlaw.com

*Counsel to Defendant Pierce Robertson*


**THE MOSKOWITZ LAW FIRM, PLLC**

*/s/ Adam M. Moskowitz*

Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
Barbara C. Lewis
barbara@moskowitz-law.com
Florida Bar No. 118114
THE MOSKOWITZ LAW FIRM, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

*Counsel to Defendants Rachel Gold, Sanford
Gold, Rahil Sayed, Christopher Ehrentraut, Todd
Manganiello, Dan Newsom, William Ayer,
Anthony Dorn, Dameco Gates, Marshall Peters,
and Edwin Garrison*

**<u>EXHIBIT A</u>**

**Proposed Amended Complaint**

[To be filed]